UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMAD KHOLBEKOV, ADIL ERBABAEV, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>- against –<br><br>AT HOME SOLUTIONS, LLC.<br>                                        Defendant. | 16-cv-7162 (RRM) (SMG)<br><br>**DECLARATION OF<br>GENNADIY NAYDENSKIY** |

I, Gennadiy Naydenskiy, pursuant to 28 U.S.C. § 1746, declare and state as follows:

I am an attorney duly admitted to practice law in the Eastern District of New York and am the founding member of Naydenskiy Law Group, P.C. ("NLG" or "Class Counsel"), attorneys for Named Plaintiffs Ahmad Kholbekov and Adil Erbabaev in the above-captioned matter. I have personal knowledge of the facts set forth herein and submit this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement.

1.            A true and accurate copy of the Proposed Order Preliminarily Approving the Proposed Settlement (the "Proposed Order") is attached hereto as **Exhibit A**.

2.            A true and accurate copy of the Proposed Notice of Class Action Lawsuit and Fairness Hearing (the "Proposed Notice") is attached hereto as **Exhibit B**.

3.            A true and accurate copy of the Complaint filed in this action on December 29, 2016 (the "Complaint") is attached hereto as **Exhibit C**.

4.            A true and accurate copy of the Settlement Agreement and Release (the "Agreement") is attached hereto as **Exhibit D**.

<u>**FACTUAL REPRESENTATIONS FROM COUNSEL**</u>

5.            Shortly after commencing the action, the parties engaged in payroll discovery and thereafter, the parties agreed to settle the matter.

6.          Under the terms of the Agreement, any and all unclaimed settlement funds after the initial distribution will be subject to a second distribution. To the extent any funds remain after a second distribution, such funds will be transferred to a *cy pres* fund to benefit National Employment Lawyers Association, New York.

7.          Class Counsel selected Rust Consulting, Inc. to serve as a Claims Administrator to administer the Settlement Fund.

8.          The parties were able to come to a resolution following a time and resource consuming discovery process, which included the production, review and analysis of payroll records.

9.          The Parties have conducted discovery, which they believe has been sufficient to resolve the action responsibly. For instance, Defendant provided NLG with reports of Class action members' regular hours worked, regular hours paid, overtime hours worked, and overtime hours paid. This information and data was analyzed by Class Counsel.

10.          Named Plaintiffs have shown their commitment to  the Proposed Class by: (i) coming forth and engaging Class Counsel to pursue their claims and the claims of Class Members; (ii) providing documents and information to Class Counsel; (iii) assisting in the preparation of the Complaint, (iv) searching for relevant documents, (v) meeting and communicating with Class Counsel during the litigation, or otherwise making themselves available to answer questions and make decisions on behalf of the class during the mediation, and (viii) undertaking the risk of retaliation by holding their names out in the caption of a publicly filed Complaint (in the case of the Named Plaintiffs).

11.          Class Counsel further reviewed documents reflecting the total number of hours worked by Class Members per year to calculate estimated wages owed.

12.          Based on Class Counsel's damages analysis, the parties calculated that: (i) From January 1, 2015 through September 31, 2015 class members would be owed $146,409.89, (ii) from October 1, 2015 through December 31, 2015 to be $49,427.45 and, (iii) liquidated damages for October 1, 2015 through December 31, 2015 would be $49,427.45. Therefore, the class wide damages as to the claims were a maximum of approximately $245,264.79.

13.          Defendants arguably had a number of viable defenses to each claim, including: (i) Plaintiffs were exempt under the companionship exemption from January 1, 2015 through October 13, 2015; (ii) even if Plaintiffs were not exempt, Plaintiffs would not be able to recover liquidated damages for violations occurring from January 1, 2015 through October 13, 2015; and (iii) NYLL 195.1 forms were provided to all Class Members.

14.          Absent settlement, Plaintiffs would have to subsequently move for certification of a class and/or collective. Defendants would contest certification and move themselves for decertification of any certified class or collective.

15.          Additionally, both Parties would move for full or partial summary judgment. Ultimately, a trial in this action would be lengthy and complex, consuming the time and resources of all Parties and the Court. Even after a verdict, any judgment is likely to be appealed.

16.          Settlement, however, makes relief available to Class Members in a prompt, efficient and risk-free manner.

17.          While Plaintiffs believe that they would ultimately establish Defendants' liability, obtaining this result would require significant factual and legal development and overcoming the existence of certain unfavorable documents and legal decisions.

18.          A trial on the merits would involve significant risks as to liability and damages. Class Counsel understands that the outcome at trial and the inevitable appeals process are

inherently uncertain in terms of outcome and duration.

19.          Settlement also eliminates the risk, expense, and delay that permeate the class certification process.

20.          Plaintiffs have been advised of the potential upside of proceeding on the merits, but believe the Settlement is in the best interests of the Class Members they represent.

21.          Plaintiffs, who are or were home health aides, do not have substantial financial resources to prosecute individual actions.

22.          Class Counsel is unaware of any pending individual lawsuits filed by Class Members arising from the same allegations.

23.          Defendants conduct a substantial amount of their business within the jurisdiction of this Court.

24.          The class action device will avoid the waste and delay of potentially repetitive proceedings and inconsistent judgments if certification were denied.

25.          NLG has done substantial work identifying, investigating and prosecuting Plaintiffs' claims.

26.          NLG has substantial experience prosecuting and resolving wage-and-hour actions, is well-versed in the substantive law at issue, and is well-qualified to represent the interests of the class.

27.          NLG has committed substantial resources in prosecuting and settling this action.

28.          I declare under penalty of perjury that the foregoing is true and correct.


Dated: June 27, 2017

                              NAYDENSKIY LAW GROUP, P.C.

                              _____s/_____

4

Gennadiy Naydenskiy (GN5601)
1517 Voorhies Ave, 2nd Fl.
Brooklyn, NY 11235
(718) 808-2224
naydenskiylaw@gmail.com
*Attorney for Plaintiffs and Class Members.*

# EXHIBIT A

Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMAD KHOLBEKOV, ADIL ERBABAEV, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>- against –<br><br>AT HOME SOLUTIONS, LLC.<br>                              Defendant. | 16-cv-7162 (RRM) (SMG) |

## [PROPOSED] ORDER PRELIMINARILY
## APPROVING THE PROPOSED SETTLEMENT

The above matter came before the Court for Preliminary Approval of the Proposed

Settlement, Certification of the Settlement Class, Appointment of Named Plaintiff's Counsel,

Naydenskiy Law Group, P.C., as Class Counsel, Appointment of Rust Consulting, Inc. ("Rust")

as administrator of the settlement ("Claims Administrator" or "Administrator") and Approval of

the Proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the

"Proposed Notice" or "Notice") (collectively, the "Proposed Order").

1.      Based upon the Court's review of the motion papers filed by Named Plaintiffs

Ahmad Kholbekov and Adil Erbabaev (together referred to as, "Plaintiffs"), including the

Declaration of Gennadiy Naydenskiy ("Naydenskiy Decl."), and all other papers submitted in

connection with the Motion for Preliminary Approval, the Court grants preliminary approval of

the settlement memorialized in the Settlement Agreement and Release (the "Agreement") by

and between Plaintiffs and Defendants (the "Parties").

2.      The Court provisionally certifies the following class under Federal Rule of Civil

Procedure 23(e), for settlement purposes only ("Class Members" or the "Proposed Class") as:

All home health aides who worked for AT HOME SOLUTIONS, LLC during the period of January
1, 2015 through December 31, 2015

3.      The Proposed Class meets all of the requirements for class certification under

Federal Rule of Civil Procedure 23(a) and (b)(3).

4.      The Court appoints Naydenskiy law Group, P.C. ("Class Counsel"), 1517 Voorhies

Ave, 2nd Fl, Brooklyn, New York 11235, as Class Counsel because the firm meets all of the

requirements of Federal Rule of Civil Procedure 23(g).

5.      The Court appoints Rust Consulting as Claims Administrator, who will be

responsible for administering the settlement.

6.      The Court approves the proposed Notice of Class Action Lawsuit and Fairness

Hearing (the "Proposed Notice"), attached as Exhibit B to the Naydenskiy Decl., and directs

its distribution to the Class Members.

7.      The Court hereby sets the following settlement procedure:

a.      Within 7 days after the entry of this Order, Defendant will provide the Claims

Administrator with a list (the "Class List") in electronic form containing each of the Class

Members' (1) names, (2) last known addresses, phone numbers and email addresses (if known

and to the extent that such records exist), (3) job positions, (4) dates of employment, and (5)

social security numbers, if available.

b.      Within 22 days after the entry of this Order, the Claims Administrator shall mail

the Proposed Notice to each Class Member via First Class Mail (postage prepaid) through the

United States Postal Service.

     c.     The Proposed Class will have 60 days after the date the Proposed Notice is mailed to opt-out of or object to the Agreement (the "Opt-Out Period").

     d.     The Court will hold a fairness hearing on _____

[INSERT DATE NO SOONER THAN 90 DAYS OF THE DATE OF THIS ORDER] at _____ a.m./p.m. at the United States District Court, Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201.

     e.     No later than 15 days prior to the Fairness Hearing, the Claims Administrator shall certify jointly to Class Counsel and to Defendants' counsel a final list of all Opt-Out statements received during the Opt-Out Period.

     f.     No later than 14 days prior to the fairness hearing, Plaintiffs will submit a Motion for Final Approval of Settlement, Payment of Service Awards and Payment of Class Counsel's Legal Fees ("Final Approval Motion").

     g.     After the fairness hearing, if the Court grants the Final Approval Motion, the Court will issue a Final Approval Order. If no party appeals the Final Approval Order, the "Effective Date" of the Agreement will be 30 days after the Court enters its Final Approval Order.

     h.     Within 10 days after the entry of the Final Approval Order, Defendant will deposit One Hundred and Fifty Thousand Dollars and Zero Cents ($150,000.00) plus applicable tax payments into an escrow account established and administered by the Claims Administrator.

     i.     The Claims Administrator will disburse the first distribution of settlement checks to the Proposed Class, Court-approved attorneys' fees and costs, Court-approved enhancement awards, and Court-approved Claims Administrator's fees within 10 days of the Effective Date.

j.      The Parties shall abide by all terms of the Agreement, including, but not limited to, those terms addressing the timing and method of Defendants' payments into a settlement fund, and disbursal of same by the Claims Administrator to the Proposed Class.

It is so ORDERED this ____ day of _____, 2017.

_____
The Honorable Steven M. Gold
United States Magistrate Judge

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMAD KHOLBEKOV, ADIL ERBABAEV, individually and on behalf of all others similarly situated, | 16-cv-7162 (RRM) (SMG) |
| Plaintiffs, | |
| - against – | |
| AT HOME SOLUTIONS, LLC. | |
| Defendant. | |

## NOTICE OF PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT

TO: ALL HOME HEALTH AIDES  WHO WORKED OVERTIME HOURS FOR AT HOME
SOLUTIONS, LLC. FROM JANUARY 1, 2015 THROUGH DECEMBER 31, 2015.

DATED:_____, 2017

THIS IS A COURT APPROVED NOTICE PLEASE READ THIS NOTICE CAREFULLY

You may be entitled to receive money under a proposed class and collective action settlement. Named Plaintiffs Ahmad Kholbekov and Adil Erbabaev (hereinafter collectively "Plaintiffs") and Defendants encourage you to participate in this Settlement if you are eligible. Defendants will not retaliate against any current or former employees who claim their share of this proposed Settlement.

The Court has decided that the lawyers at the law firm Naydenskiy Law Group, P.C. are qualified to represent you and all Class Action Members. These lawyers have been designated as "Class Counsel" in this lawsuit. If you have any questions regarding this notice, or questions concerning the calculation of your share of the Settlement Fund, contact Class Counsel, Naydenskiy Law Group, P.C. 1517 Voorhies Ave, Second Floor, Brooklyn, New York, 11235; Tel: (800)  789-9396; naydenskiylaw@gmail.com;

IMPORTANT DEADLINES FOR CLASS MEMBERS

• Last Day To "Opt Out" Of The Settlement Class: [60 days after mailing]
• Last Day To Object To The Settlement: [60 days after mailing]
• Fairness Hearing: [Enter date, time, and location]

## WHAT IS A CLASS ACTION?

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more representative plaintiffs, also known as "class representatives," file a lawsuit asserting claims on behalf of the entire class. In this case, the Class consists of all employees who worked as a home health aide from January 1, 2015 through December 31, 2015 ("Class Members"). Here, the claims of the class related to alleged violations of the New York

Labor Law ("NYLL").

## WHAT IS THE PURPOSE OF THIS NOTICE?

Judge Steven M. Gold has ordered that this Notice be sent to you because you may be a Class Member. The purpose of this Notice is to inform you of your rights under a proposed settlement.

## WHAT IS THIS CASE ABOUT?

The lawsuit alleged that Defendants violated the FLSA and NYLL by failing to provide Class Members appropriate overtime compensation for hours worked in excess of 40 per week and provide accurate wage statements on each pay week. Defendants deny these allegations and deny any violation of the law in any way.

## WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?

If the settlement is approved by the Court, the Defendants, will pay a maximum total of $150,000.00 (the "Settlement Fund"). The Settlement Fund will be funded within 10 days of the Court's Final approval of the class action settlement. If the Court approves the payments set forth below, the following payments and expenses will be deducted from the Settlement Fund, prior to distribution of funds to Class and Collective Members:

- Service Awards:   If the Court approves such payments a total of $20,000 will be paid out of the Settlement Fund to the Plaintiffs.

- Attorneys' Fees and Costs: Class Counsel will apply to the Court for attorneys' fees in the amount of 1/3 of the settlement amount and costs.

## DISMISSAL OF CASE AND RELEASE OF CLAIMS

In exchange for the payments set forth above, the lawsuit will be dismissed with prejudice, and the Class will fully release and discharge the Defendant from any wage and hour claims that were or could have been asserted in this lawsuit under the NYLL and its implementing regulations. For individuals who cash their checks, federal claims under the Fair Labor Standards Act will also be released. It is very important that you understand the terms of the Release. The Court will not further consider these claims and once they are released, no one covered by the Release can sue Defendant over those claims in the future.

## WHAT ARE YOUR OPTIONS?

You have several options. Make sure you read this section carefully.

### 1. Participate in the Settlement:

If you are a Class Member and do not opt out of this Settlement, you will recover a share of the Settlement Fund.  If you wish to recover a share of the Settlement Fund, you should take no action.

### 2. Opt Out of the Settlement Class:

If you do not wish to participate in the settlement of the class claims, or you want to retain the right to pursue your own lawsuit, you can opt out of the Settlement. <u>If you do not opt out, you will be bound by the terms of this Settlement and your New York State law claims will still be released.</u> To opt out, you must send a letter which includes your name, current address, and telephone number. It must also include the following sentence: "I elect to exclude myself from the settlement in *Kholbekov, et. al. v. At Home Solutions, LLC.*, Case No. 16-cv-7162 (DCF)." Any such written exclusion must be postmarked no later than [60 days after mailing]. If you choose to opt out of the settlement, you cannot object to the settlement or speak at the Fairness Hearing. If you choose to opt out, send your letter to:

**AT HOME SOLUTIONS SETTLEMENT**
**ADMINISTRATOR C/O RUST**
**CONSULTING INC.**
**PO BOX 2396**
**FARIBAULT, MN 55021-9096**

**3.   Objecting to the Settlement:**

If you wish to object to the proposed Settlement, the proposed plan of allocation of the settlement funds, or the application for attorneys' fees and costs, or service awards, you may do so. If you object and the Court approves the settlement, you will be bound by the settlement, and your claims will be released. You are not required to submit a comment or objection. To submit an objection you must send a letter explaining the reason for your objection which includes your name, current address, and telephone number. It must also include the following sentence: "I object to the settlement in *Kholbekov, et. al. v. At Home Solutions, LLC.*, Case No. 16-cv-7162 (SMG)" Written objections must be post-marked no later than [60 days after mailing], and sent to:

**AT HOME SOLUTIONS SETTLEMENT**
**ADMINISTRATOR C/O RUST**
**CONSULTING INC.**
**PO BOX 2396**
**FARIBAULT, MN 55021-9096**

**4.   When and What is the Fairness Hearing and Do I need to attend?**

A hearing before the Honorable Judge Steven M. Gold will be held on [date and time of hearing] at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, in Courtroom 13-D (the "Fairness Hearing"). The purpose of the Fairness Hearing will be for the Court to consider whether the Settlement is fair, reasonable, and adequate. If there are any objections timely mailed, the Court will consider them. After the hearing, the Court will decide whether to approve the Settlement.

You are not required to attend the Fairness Hearing, even if you filed an objection. Class Counsel will represent you at the hearing. Of course, you are welcome to attend with or without your own lawyers (at your own expense) if you so desire.

## HOW WILL MY SHARE BE CALCULATED IF I PARTICIPATE?

Each Class Member who does not opt out of the Settlement will receive a share of the Settlement Fund that remains after the deductions of the Service Awards, Attorneys' Fees and Costs listed above. Your share will depend on the number of overtime hours that you worked at At Home Solutions, LLC. during the relevant period. If you take no action, you will receive this payment.

The Settlement Fund will be distributed to each Class Member who does not opt out of the settlement class according to the following formula:

> (i)    Class Members shall receive One (1) point for every hour in excess of 40 hours per work week from October 13, 2015 through December 31, 2015 and half a point (.5) for every hour in excess of 40 hours per work week from January 1, 2015 through October 12, 2015.

The Settlement Fund, after deductions for court approved attorneys' fees, Service Awards, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all of the Class Members and any points that would have been attributable to any individuals who opted out of the settlement had they remained a Class Members ("Point Value"). Each Class Member's total points will be multiplied by the Point Value to determine his/her "Individual Settlement Amount."

Each Individual Settlement Amount will be apportioned as 50% unpaid wages and 50% liquidated damages. The unpaid wage portion shall be paid subject to all tax withholdings required by law. You will receive a form W-2 for the unpaid wage portion and a form 1099-MISC for the liquidated damages portion.

## PAYMENTS AND UNCASHED CHECKS

The Claims Administrator shall, within ten (10) business days after the Final Effective Date has passed, send the Settlement Checks comprising the Plaintiffs' Individual Settlement Amounts, Plaintiffs' Counsels' approved professional fees and expenses, and any Service Awards for Plaintiffs to the Class Members, Collective Members, Service Award recipients and Plaintiffs' Counsel.

Class Members will have sixty (60) days from the date that the checks are mailed to cash their checks. After the expiration of that period, to the extent that any funds remain in the Settlement Fund, the Administrator will distribute the balance to the Class Members who have cashed their checks on a pro rata basis. All unclaimed amounts after this second distribution will be provided to National Employment Lawyers Association, New York.

## TAX TREATMENT

The Claims Administrator will issue each Class Member who has cashed a check an IRS Form W-2 for that portion of the Class Member's settlement payment which is being treated as wages, and an IRS Form 1099 for the portion of the Class Member's settlement payment which is being treated as liquidated damages and interest. Other than the Defendants' portion of the withholdings, Class Members are responsible for the appropriate payment of any taxes on the payments they receive. Class Counsel and Defendants' Counsel do not intend this Notice to constitute tax advice. To the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state or

local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to advise the trustee of this settlement.

By Order of the Court Dated: [date of Court Order]

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMAD KHOLBEKOV, ADIL ERBABAEV, individually and on behalf of all others similarly situated, | Index No. |
| Plaintiffs, | **COMPLAINT** |
| - against – | **FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION** |
| AT HOME SOLUTIONS, LLC. | |
| Defendant. | |

Plaintiffs AHMAD KHOLBEKOV and ADIL ERBABAEV by and through their attorneys, on behalf of themselves and all others similarly situated, alleges, upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs bring this action, on behalf of themselves and other employees similarly situated, to remedy violations of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq. ("FLSA"). Plaintiffs seek, for themselves and similarly situated employees, unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate legal and equitable relief, pursuant to 29 U.S.C. §§ 216(b) and 217, and other applicable federal law.

2. Plaintiffs also bring this action, on behalf of themselves and other employees similarly situated, to remedy violations of the New York State Labor Law, including N.Y. Lab. L. §§ 190 et seq., §§ 650 et seq. ("NYLL"), and 12 NYCRR § 142-

1

2.2. Plaintiff seeks, for themselves and all other similarly situated employees, unpaid overtime wages, statutory damages, interest, reasonable attorneys' fees and costs, liquidated and other damages, and all other appropriate legal and equitable relief, pursuant to the NYLL §§ 198, 663.

## JURISDICTION AND VENUE

3.     Jurisdiction of the Court over Plaintiffs' FLSA claims is invoked pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.     Jurisdiction of this Court over Plaintiffs' NYLL claims is invoked pursuant to 28 U.S.C. § 1367(a) in that the NYLL claims are so related to Plaintiffs' FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper within this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred within this District. Venue is further proper within this District pursuant to 28 U.S.C. § 1391 because Defendant may be found in this District.

## PARTIES

6.     Plaintiff AHMAD KHOLBEKOV ("Kholbekov") resides in the County of Kings in the State of New York.  At all relevant times, Kholbekov was employed by Defendant as a home health aide and/or home attended ("home health aide"), as described herein, from in or around 2014 through in or around November, 2016.

7.     Plaintiff ADIL ERBABAEV ("Erbabaev") resides in the County of Kings in the State of New York.  At all relevant times, Erbabaev was employed by Defendant as a home health aide, from in or around October 1, 2013 through in or around July 1, 2016.

8.     Plaintiffs' written consent to sue is attached hereto as Exhibit "A"

2

9.     Defendant AT HOME SOLUTIONS, LLC., is a New York State domestic corporations licensed to do business in the State of New York, with its principal office and place of business at 11102 Jamaica Ave, Richmond Hill, NY 11418.

10.    Defendant grosses more than $500,000.00.

11.    At all relevant times, Defendant has been, and continues to be an "employer" engaged in interstate "commerce" and/or in the "production of goods" for "commerce", within the meaning of 29 U.S.C. § 203 and the NYLL.  At all relevant times, Defendant employed "employee[s]", including Plaintiff, each of the FLSA Collective Plaintiffs and the Class Members.

## FACTUAL ALLEGATIONS

12.    Defendant provides home health care to individuals who live in New York City.

13.    At all times relevant hereto, Defendant employed Plaintiffs as a non-exempt home health aide.

14.    Plaintiffs were not paid an overtime premium for all hours worked in excess of forty.

15.    At all times relevant hereto, Defendant employed the FLSA Collective Plaintiffs and the Class Members as non-exempt home health aides.

16.    Defendant scheduled Kholbekov to work-and Kholbekov worked- varied hours, however, for example: (a) for the work week of September 5th to September 11th, 2015, Kholbekov worked eighty-four (84) hours, (b) for the work week of November 28 to December 4, 2015, Kholbekov worked forty-eight (48) hours.

3

17.     From, at least, in or around March 1st, 2015 through in or around July 1, 2016, Defendant scheduled Erbabaev to work- and Erbabaev worked- four (4) days per week, working twelve (12) hour a work day, forty-eight (48) hours per work week.

18.     Defendant paid Plaintiffs $11.30 for hours worked up to 40 per work week, and $13.13 per hour worked in excess of 40 hours per work week, which is below the overtime rate of one and one-half times the regular hourly rate as required by law for all hours worked in excess of forty (40) hours per week.

19.     Defendant scheduled the FLSA Collective Plaintiffs and the Class Members to work over 40 hours a work week.

20.     Plaintiffs, the FLSA Collective Plaintiffs, and the Class Members regularly worked in excess of 40 hours a work week.

21.     Defendant failed to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime premiums of one and one half times their regular hourly rates of pay for all of the hours they worked in excess of 40 hours per week.

22.     Defendant failed to pay Plaintiffs and the Class Members the required overtime premiums of one and one half times their regular hourly rates of pay for all of the hours they worked in excess of 40 hours per week.

23.     Defendant violated NYLL § 195(3) by failing to furnish Plaintiff and the Class Members with a statement with every payment of wages, listing, among other things, hours worked, rates paid, gross wages, deductions and net wages, and an explanation of how such wages were computed.

24.     Defendant knew of, and/or showed reckless disregard for, the practices by which Plaintiffs and other similarly situated employees of Defendant were not paid

4

overtime premiums for all hours worked in excess of 40 hours in a week. Defendant knew that the nonpayment of overtime premiums would economically injure Plaintiffs and the FLSA Collective Plaintiffs and that they violated the FLSA and the NYLL.

25.     Defendant committed the foregoing acts knowingly, intentionally and willfully against the Plaintiff and the FLSA Collective Plaintiffs.

## COLLECTIVE ACTION ALLEGATIONS

26.     Plaintiffs bring the First Claim for Relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all persons employed by Defendant as a Home Health Aide from January 1, 2015. All said persons, including Plaintiff, are referred to herein as the "FLSA Collective Plaintiffs".

27.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements, job duties and pay provisions, and are and have been subject to Defendant's decision, policy, plan, practice, procedure, routine and rules to willfully fail and refuse to pay them the legally required overtime premium for all hours worked in excess of forty (40) hours per workweek. The claims of the Plaintiffs herein are essentially the same as those of the other FLSA Collective Plaintiffs.

28.     Other home health aides currently or formerly employed by Defendant should have the opportunity to have their claims for violations of the FLSA heard. Certifying this action as a collective action under the FLSA will provide other non-exempt home health aides to receive notice of the action and allow them to opt in to such an action if they so choose.

5

29.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to §216(b) of the FLSA, 29 U.S.C. 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last addresses known to Defendant.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

30.     Plaintiffs bring the Second and Third Claims for Relief pursuant to CPLR Article 9, to recover unpaid overtime pay and other damages on behalf of all individuals employed in the State of New York by Defendant as a home health aide from January 1, 2015 (the "Class Period"). All said persons, including Plaintiff, are referred to as the "Class Members" and/or the "Class".

31.     The number, names and addresses of the Class Members are readily ascertainable from the records of the Defendant.  The dates of employment and the rates of pay for each Class Member, the hours assigned and worked, and the wages paid to them, are also determinable from Defendant's records.  Notice can be provided by means permissible under CPLR Article 9.

32.     The proposed Class is so numerous that joinder of all Class Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  While the precise number of such persons is unknown to Plaintiffs and is presently within the sole control of Defendant, Plaintiffs believe that through discovery he will obtain evidence to establish that there are at least forty members of the Class.

33.     Plaintiffs' claims are typical of the claims of the other Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions. All the Class Members were subject to the same corporate practices of Defendant, in that they were not compensated for (i) overtime hours worked as required by 12 N.Y.C.R.R. § 142-2.2; and (ii) failed to provide them with proper wage statements as required by NYLL § 195.  Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member.

34.     Plaintiffs and the other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures caused by Defendant violations of the NYLL.

35.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiffs have retained Naydenskiy Law Group, P.C., an experienced employment and class and collective action litigation firm.

36.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Class Members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it

extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37.    Upon information and belief, employees of the Defendant are often afraid to individually assert their rights out of fear of direct or indirect retaliation and former employees are fearful of bringing individual claims because the fear that doing so could harm their employment, future employment, and future efforts to secure employment. A class action provides Class Members who are not named in the Complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

38.    The questions of law and fact common to the Class predominate over any questions affecting only individual Class Members, including: (a) whether Defendant failed to adequately compensate the Class Members for overtime hours worked as required

8

by 12 NYCRR § 142-2.2, and (b) whether Defendant provided Class Members with sufficiently detailed wage statements as required by NYLL § 195(3).

39.     Absent a class action, many of the Class Members likely will not obtain redress of their injuries and Defendant will retain the proceeds of their violations of the NYLL.

## FIRST CLAIM FOR RELIEF
**(Failure to Pay Overtime Wages – FLSA, Brought by Plaintiff on Behalf of Themselves and the FLSA Collective Plaintiffs)**

40.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

41.     Throughout the statute of limitations period covered by these claims, Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek and continue to do so.

42.     At all relevant times, Defendant willfully, regularly, repeatedly and knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime rates for hours worked in excess of forty (40) hours per workweek.

43.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Failure to Pay Overtime Wages – NYLL, Brought by Plaintiff on Behalf of Themselves and the Class Members)

44.     Plaintiffs, on behalf of themselves and the Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

45.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime premiums for all hours worked in excess of forty (40) hours in any workweek.

46.     Defendant willfully, regularly, repeatedly and knowingly failed to pay Plaintiffs and the Class Members the required overtime rates for hours worked in excess of forty (40) hours per workweek.

47.     As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiffs and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

48.     Plaintiffs and the Class Members seek damages in the amount of their respective unpaid overtime compensation, liquidated damages, prejudgment interest, attorneys' fees and costs, pursuant to NYLL, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (Wage Statement Violations – NYLL §195, Brought by Plaintiff on Behalf of Themselves and the Class Members)

49.     Plaintiffs, on behalf of themselves and the Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

50.     Defendant willfully failed to supply each Plaintiffs and the Class Members with an accurate statement of wages as required by NYLL § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

51.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover damages and/or statutory penalties from Defendant, as provided for by NYLL § 198, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class Members, pray for relief as follows:

(a)     Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b)     Certification of this action as a class action;

11

(c)     Designation of the Named Plaintiffs as Representatives of the FLSA Collective Plaintiffs and Class Representatives of the Class;

(d)     An award of damages, according to proof, including FLSA and NYLL liquidated damages, and interest, to be paid by Defendant;

(e)     Costs of action incurred herein, including expert fees;

(f)     Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. §§ 663, 198 and other applicable statutes;

(g)     Pre-Judgment and post-judgment interest, as provided by law; and

(h)     Such other and further legal and equitable relief as this Court deems necessary, just and proper.


Dated: December 29, 2016                    Respectfully submitted,

                                            NAYDENSKIY LAW GROUP, P.C.

                                            Gennadiy Naydenskiy (GN5601)
                                            1517 Voorhies Ave, 2nd fl.
                                            Brooklyn, NY 11235
                                            (718) 808-2224
                                            naydenskiylaw@gmail.com
                                            *Attorney for Plaintiffs, Proposed Collective
                                            Action Plaintiffs and Proposed Class
                                            Members*

12

# EXHIBIT A

I am a current or former employee of AT HOME SOLUTIONS, LLC, and/or related entities/individuals. I hereby consent and agree to be a party Plaintiff in this Action to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. 216(b).

I hereby designate Naydenskiy Law Group, P.C. to represent me in this Action and I also consent and agree, if such is necessary, to file this claim on behalf of all others similarly situated.

Signed this 19 day of 12 , 2016.

_____
Signature

AHMAD KHOLBEKO
Full Legal Name (print)

I am a current or former employee of AT HOME SOLUTIONS, LLC, and/or related entities/individuals. I hereby consent and agree to be a party Plaintiff in this Action to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. 216(b).

I hereby designate Naydenskiy Law Group, P.C. to represent me in this Action and I also consent and agree, if such is necessary, to file this claim on behalf of all others similarly situated.

Signed this _21_ day of _7_____ , 2016.

_____
Signature

_Adil Erbabaeu_
Full Legal Name (print)

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMAD KHOLBEKOV, ADIL ERBABAEV, individually and on behalf of all others similarly situated, | 16-cv-7162 (RRM) (SMG) |
| Plaintiffs, | |
| - against – | |
| AT HOME SOLUTIONS, LLC. | |
| Defendant. | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Named Plaintiffs AHMAD KHOLBEKOV, ADIL ERBABAEV (the "Named Plaintiffs"), and by Defendant AT HOME SOLUTIONS, LLC. ("Defendant") (Named Plaintiffs and Defendant are herein collectively the "Parties").

1. **RECITALS AND BACKGROUND**

WHEREAS, Named Plaintiffs filed a Complaint on December 29, 2016, in the United States District Court, Eastern District of New York bearing Case No. 16-cv-7162 ("Litigation"); and

WHEREAS, the Parties will file a joint motion with the Court seeking to certify the Litigation for settlement purposes only as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Motion") with respect to all home health aides who worked for AT HOME SOLUTIONS, LLC during the period from January 1, 2015 through December 31, 2015 ("Relevant Time Period"); and

WHEREAS, the Parties have engaged in and completed sample discovery during the course of the Litigation in connection with its potential settlement; and

WHEREAS, Defendant denies and continues to deny each of the material allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Defendant nonetheless, solely for the purpose of settling the Litigation and without admitting any wrongdoing or liability, has agreed to disseminate a Notice (as defined below) pursuant to Rule 23 of the Federal Rules of Civil Procedure to all Class Members and Collective Members (as those terms are defined below);

WHEREAS, the purpose of this Agreement is to settle fully and finally all State Law Claims and FLSA Claims (both as defined below), between Named Plaintiffs, Class Members, and Defendant, for all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel (as defined below) have evaluated the merits of the claims made against Defendant and the impact of this Agreement on Plaintiffs and Class Members and, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery less favorable or immediate than that described in this Agreement, Plaintiffs' Counsel is satisfied that this Agreement's terms and conditions are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs and the Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 2.   DEFINITIONS

In addition to the terms already defined above, the terms below shall have the meanings ascribed to them.

2.1 "**Administrator**" or "**Claims Administrator**." The terms Administrator or Claims Administrator refer to Rust Consulting, Inc., the administrator Plaintiffs have selected to mail the Notices (as described below) and to administer the terms of this Agreement.

2.2 "**Class**" or "**Class Member(s).**" Class or Class Members shall mean: all home health aides who worked for AT HOME SOLUTIONS, LLC during the period from January 1, 2015 through December 31, 2015, who do not opt-out of the Litigation as explained below. Class Members acknowledge that they agree to settle and release all State Law Claims and FLSA claims they may have against Defendant and/or Releasees (as defined below).

2.3 "**Class Counsel**" or "**Plaintiffs' Counsel.**" Class Counsel or Plaintiffs' Counsel shall mean Gennadiy Naydenskiy of Naydenskiy Law Group, P.C.

2.4 "**Class Member List.**" The Class Member List shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) telephone number; and (iii) dates of employment during the relevant Time Period; contained in a confidential document that the

Defendant shall provide to the Claims Administrator.

2.5  **"Named Plaintiffs"**. Named Plaintiffs shall mean AHMAD KHOLBEKOV and ADIL ERBABAEV.

2.6  **"Court."** The Court shall mean the United States District Court for the Eastern District of New York, the Honorable United States Magistrate Judge Steven M. Gold presiding; or such other Judge or Magistrate Judge to whom the Litigation may then be assigned.

2.7  **"Days."** Unless otherwise specified, days shall mean calendar days.

2.8  **"Defense Counsel."** Defense Counsel shall be Philip K. Davidoff of FordHarrison LLP.

2.9  **"Fairness Hearing."** The Fairness Hearing shall mean the hearing before the Court relating to the Motion for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

2.10  **"Final Effective Date."** The Final Effective Date shall be thirty (30) days after the Court has entered a Final Order approving this Agreement provided the time to appeal from the Final Order has expired and no notice of appeal has been filed. In the event a notice of appeal is filed, the Final Effective Date shall be the latest date upon which one of the following has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

2.11  **"Final Order."** The Final Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of funds from the Settlement Account, approval of professional fees and costs, and dismissal of the Litigation.

2.12  **"FLSA Claims."** The FLSA Claims shall mean all wage and hour claims that were asserted or could have been asserted pursuant to the Fair Labor Standards Act and/or its implementing regulations by or on behalf of the Plaintiffs or Class Members. "Released FLSA Claims" include all claims under the FLSA for unpaid minimum or overtime wages asserted in the litigation or that could have been asserted in the litigation.

2.13     **"Implementing Order."** The Implementing Order shall mean the Order entered by the Court: (i) effectuating the settlement; (ii) approving the proposed Notice; (iii) directing the manner and timing of publishing the Notice to the Class, and (iv) appointing Class Counsel.

2.14     **"Motion for Final Approval."** The Motion for Final Approval shall mean the Parties' Motion for class action certification for settlement purposes only pursuant to Rule 23 of the Federal Rules of Civil Procedure; and any other relief necessary to consummate the settlement of the Litigation.

2.15     **"Notice," "Notices".** Notice and Notices shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed settlement.

2.16     **"Objector."** Objector shall mean any Class Member who properly files an objection to the settlement in accordance with the instructions contained in the Notice; it shall not include any individual who opts-out of this Agreement.

2.17     **"Opt-out Statement."** An Opt-out Statement is a written signed statement submitted by a Class Member who has decided to opt out and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement waives and releases all State Law Claims, even if he or she does not cash his or her settlement check(s) in this matter. A Class Member who submits an Opt-out Statement retains all rights to maintain State Law Claims and FLSA claims

2.18     **"Settlement Account."** The Settlement Account shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to the Parties. The Settlement Account shall contain the Settlement Funds.

2.19     **"Settlement Checks."** The Settlement Checks shall mean the checks issued to from the Settlement Account by the Administrator to the Plaintiffs as calculated by the Administrator in accordance with this Agreement.

2.20     **"Settlement Amount."** The Settlement Amount means One Hundred Fifty Thousand Dollars and Zero Cents ($150,000), which is the maximum amount Defendant will pay to settle the Litigation as set forth in this Agreement, excluding Defendant's obligation to pay the employer payroll taxes on the portion of the settlement that constitutes wages.

2.21     **"State Law Claims."** The State Law Claims shall mean all minimum wage, overtime pay, and NYLL §195 claims that were or could have been asserted under New York State Labor Law and its implementing regulations by the Plaintiffs and the Class Members. Released New York State Law Claims include, unpaid minimum or overtime wages, and Wage

Theft Prevention Act penalties and any other related wage and hour claims and/or damages resulting from the alleged failure to pay overtime or wages, interest on such claims, and attorneys' fees, expenses and costs related to such claims.

## 3.    INITIAL PROCEDURAL ISSUES

3.1    **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

3.2    **Retention of the Administrator.** Plaintiffs shall engage the Administrator to mail Notices and administer the terms of the Agreement.

3.3    **Responsibilities of the Administrator**. The Administrator shall be responsible for:

A.    preparing, printing and disseminating the Notice to the Class;

B.    copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

C.    promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class that the Administrator receives;

D.    keeping track of Opt-out Statements and maintaining the original mailing envelope in which the request was mailed;

E.    mailing all required tax forms to Class Members and to Class Counsel as provided herein;

F.    setting up a Settlement Account to be used for the distribution of all Settlement Checks to Plaintiffs, Class Members, Plaintiffs' Counsel, the Claims Administrator;

G.    calculating the amount of each Plaintiff's and Class Member's Settlement Check;

H.    calculating the employer-side payroll taxes required pursuant to the settlement;

I.    calculating and paying each Plaintiffs and Class Member's withholding taxes and preparing appropriate W-2 and 1099 tax forms for each Plaintiff and Class Member;

J.    mailing the Settlement Checks to Plaintiffs and Class Members;

K.    ascertaining current address and addressee information for each Notice returned as undeliverable and the mailing of Notice;

L.    referring to Class Counsel and Defense Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

M.  responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

N.  promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

O.  maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

P.  confirming in writing to  Class Counsel and Defense Counsel its completion of the administration of the settlement;

Q.  timely responding to communications from the Parties or their counsel;

R.  preparing and mailing all notices required pursuant to the Class Action Fairness Act; and,

S.  such other tasks the Parties mutually agree.

T.  In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly to Plaintiffs' Counsel and to Defense Counsel (a) a list of all Class Members and (b) a list of all Class Members and Collective Members who filed timely objections; and, (c) a list of all Class Members and/or Collective Members who requested to opt out of the settlement at any time during the opt-out period. The Administrator shall also provide Defendant with an updated address list for the Class Members. Throughout the period of claims administration, the Administrator will provide reports to counsel for the Parties upon request by either Party regarding the status of the mailing of the Notices to the Class, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

    3.4  **Notice.** The Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object to, opt out of, take no action – in which case they shall remain in the Class and obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing.

    3.5  Within fifteen (15) days of the entry of the Implementing Order by the Court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court-approved Notices of Proposed Settlement and Fairness Hearing. The Administrator will take all *reasonable steps* to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including at least one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

    3.6  **Access to the Administrator**. The Parties will have equal access to the

Administrator throughout the claims administration period. Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all accurate information necessary to reasonably assist the Administrator in locating the Class.

3.7     **Approval of the Implementing Order.**

(A)     The proposed Implementing Order will seek a deadline sixty (60) days from the initial mailing of Notice to the Class: (a) to file Opt-out Statements and/or (b) to become Objectors. The Proposed Implementing Order shall also seek a date for the Fairness Hearing for Final Approval of the Settlement that shall be no earlier than seventy-five (75) days following the date on which the Court enters the proposed Implementing Order.

(B)     The Parties will work together, diligently and in good faith, to expeditiously obtain an Implementing Order, Final Order and Final Judgment and Dismissal with prejudice. Any disputes that arise between the Parties related to the Parties' efforts to obtain a Final Order, Final Judgment and Dismissal with prejudice shall be submitted to the Court.

3.8     **Notice to the Class.**

(A)     Within seven (7) days of the Court's entry of the Implementing Order, Defense Counsel will provide the Administrator, in electronic form and for all Class Members, the Class Member List. All information provided regarding the Class will be treated as confidential information by the Administrator.

3.9     **Opt-outs.**

(A)     Class Members who choose to opt out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to the Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers along with a statement indicating his or her intention to opt-out such as: "I opt out of the wage and hour settlement." To be effective, an Opt-out Statement must be postmarked or received by the Administrator within sixty (60) days after the initial mailing of Notice to the Class.

(B)     The end of the time period to opt out of the settlement ("Opt-out Period") shall be sixty (60) days after the initial mailing of Notice to the Class.

(C)     The Administrator will send a final list of all Opt-out Statements to Plaintiffs' Counsel and Defense Counsel before the Fairness Hearing. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case and have any and all State Law Claims and FLSA Claims released and dismissed. Defendant will fund the Settlement Account with the aggregate amount allocated to each Class Member as set forth in this Agreement. Defendant shall have no obligation to pay any Class Member who opts out of this settlement as set forth in this Agreement.

(E)     If 20% or more Class Members exclude themselves from the settlement, then Defendant will have 14 days from Defense Counsel's receipt of the final list of all Opt-out Statements from the Administrator, to rescind this Agreement and return each party to its respective position prior to the settlement. In the event of a rescission, Defendant shall be responsible for paying all of the Administrator's fees.

3.10    **Objections to Settlement.**

(A)     Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Administrator via First-Class United States Mail postmarked by sixty (60) days after the initial mailing of Notice to the Class. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone number for the Class Member making the objection. The Administrator will stamp the date received on the original and send copies of each objection, supporting documents, to Plaintiffs' Counsel and Defendant's' Counsel by email delivery no later than three (3) days after receipt of the objection.

(B)     An Objector has the right to appear at the Fairness Hearing, either with or without counsel hired by the Objector at the Objector's expense. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. Filing an objection does not constitute the filing of an Opt-out Statement.

3.11 **Fairness Hearing and Motion for Final Approval and Dismissal**. At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to Class Members; (3) order the attorneys' fees, expenses and costs to be paid to Plaintiffs' Counsel out of the Settlement Account; (4) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt out; (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement.

3.12 **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Litigation will proceed as if no settlement had been attempted.

# 4. SETTLEMENT TERMS

4.1 **Settlement Fund Computation and Allocations.**

Individual Class Members proportionate shares of the Settlement Fund shall be computed pursuant to the formula below:

(A) One (1) point for every hour in excess of 40 hours per work week from October 13, 2015 through December 31, 2015 and half a point (.5) for every hour in excess of 40 hours per work week from January 1, 2015 through October 12, 2015.

(B) The Settlement Fund, after deductions for court-approved attorneys' fees, Service Awards and all other court-approved fees, expenses and disbursements, will be divided by the aggregate number of points accrued by the Named Plaintiffs and all of the Class Members and any points that would have been attributable to any individuals who opted out of the settlement had they remained Class Members ("Point Value").

(C) Each Named Plaintiff's and Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount".

(D) Only Class Members who do not timely opt out under the terms of this Agreement shall be entitled to receive their Individual Settlement Amount.

(E) Service Awards. Service Awards, subject to court approval, totaling $20,000 will be paid to the following individuals based on the services they provided to the Class as follows: (1) $10,000 to Ahmad Kholbekov and (2) $10,000 to Adil Erbabaev.

(F)  **Maximum Payment**. The Parties expressly acknowledge that Defendant shall not be required to pay more than the Settlement Fund of One Hundred Fifty Thousand Dollars ($150,000.00) to the Class Members, Service Awards, Plaintiffs' Counsel, Claims Administrator, or to anyone else (excluding employer's share of payroll taxes due under this Agreement), regardless of the number of Class Members included in this settlement.

(G)  **Payment.** The Settlement Fund shall be funded within ten (10) days of the Final Order ("Payment").

**(H)  Mailing of Settlement Checks.**

(i)  The Claims Administrator shall, within ten (10) business days after receipt of the Payment, and provided the Final Effective Date has passed, send the Settlement Checks comprising of the Plaintiffs' Individual Settlement Amounts, Plaintiffs' Counsels' approved professional fees and expenses, and any Service Awards for Plaintiffs to the Class Members, Service Award recipients and Plaintiffs' Counsel.

(ii)  Class Members will have sixty (60) days from the date that the checks are mailed to cash their checks. After the expiration of that period, to the extent that any funds remain in the Settlement Fund, the Administrator will distribute the balance to the Class Members who have cashed their checks on a pro rata basis. All unclaimed amounts after this second distribution will be provided to National Employment Lawyers Association, New York ("NELA NY").

42  **Professional Fees and Costs.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees of no more than 33 1/3% of the Settlement Amount plus their reimbursable costs. Defendant will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court and provided it does not increase the Settlement Fund. If the fees and/or costs are reduced by the Court, such amount up to and including $1,000 shall be deducted from the Settlement Amount and returned to Defendant. If the fees and/or costs are reduced by more than $1,000, such amount shall remain in the Settlement Fund to be distributed to the Class Members. The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval.

43  **Claims Administrator's Fees.** As part of Parties' motion for final approval of the settlement, Plaintiffs will submit a declaration from the Claims Administrator detailing the administration process, as well as the costs of administration. Such fees shall be paid by the Settlement Fund.

4.4     **Tax Characterization.**

(A)     Except as set forth below, settlement payments to the Class Members will be allocated as follows for tax purposes: (i) 50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting, and (ii) 50% in consideration for liquidated damages and interest as non-wage payments subject to 1099 reporting.

(B)     All Wage Payments (*i.e.,* the portion set forth in Section 4.4 (A)(i) above) shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W2. All Non-Wage Payments (*i.e.,* the portion set forth in Section 4.4 (A)(ii) above) shall be made without any tax withholdings and shall be reflected on a Form 1099 issued to each Class Member r. Payments of attorneys' fees and costs pursuant to Section 4.2 shall be made without any withholdings. Class Counsel will receive a Form 1099 for this payment. Any Service Award payment shall be made without any withholdings and reported to the IRS via a Form 1099. Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section 4.4.

(C)     Defendant shall pay the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments. The Claims Administrator shall be responsible for making all withholdings from employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments.

4.5     **Hold Harmless.**

(A)     With respect to payments received pursuant to this Agreement not characterized as W-2 wage income, the Plaintiffs and Class Members assume full responsibility for any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that any individual or entity and/or Defendant is liable for any failure by any Plaintiff, Class Member and/or Defendant to pay federal, state or local income or employment or payroll taxes with respect to any payment received pursuant to this settlement that is not characterized as W-2 wage income, Plaintiffs and the Class agree to hold Defendant harmless, and indemnify Defendant from any payments the Defendant may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS tax form 1099 and any

Plaintiff's and/or Class Member's failure to pay any taxes that any such individual or entity owes related to said income.

(B)     With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Plaintiffs assume responsibility for any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as Attorneys' Fees, Plaintiffs shall be responsible for said payments and shall hold Defendant harmless for said payments.

## 5.     RELEASE

### 5.1     Release of Claims.

(A)     Upon the Order Granting Final Approval, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt out of this Agreement, on his or her own behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, in their capacity as such, fully releases and discharges Defendant, Defendant's present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, members, partners, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, in their capacity as such, (collectively, the "Releasees"), from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with the Defendant under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, administrative or other mandatory charges, penalties, overtime pay, minimum wage, failure to maintain and furnish employees with proper wage statements and/or records, and all other claims that were asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including but not limited to the Fair Labor Standards Act, New York Labor Law, New York Code of Rules and Regulations, New York Minimum Wage Order for Miscellaneous Industries and Occupations, and the New York Wage Theft Prevention Act). This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees' and costs.

(B)   All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:

By endorsing this check, I consent to join the FLSA collective action against Defendant styled Kholbekov et. al. v. At Home Solutions, LLC., Case No. 16-cv-7162, and release Defendant from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule or regulation brought or which could have been brought in the above Litigation, including but not limited to minimum wage and overtime claims. Any modification or amendment of the above-language by the Class Member, at Defendant's discretion, may not be accepted, and may void the Settlement Check. The Claims Administrator shall provide Defendant signed copies of each Settlement Check after they have been cashed."

(C)   **Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(D)   Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, the Plaintiffs and the Class, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendant for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Class. Plaintiffs further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Plaintiffs' Counsel's representation of the Class in the Litigation.

**6.     INTERPRETATION AND ENFORCEMENT**

6.1     **Cooperation Between the Parties; Further Acts**. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

6.2     **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

6.3     **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns, in their capacity as such.

6.4     **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.5     **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.6     **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

6.7     **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

6.8     **Governing Law.** This Agreement shall in all respects be interpreted, enforced

and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.9     **Continuing Jurisdiction.** The United States District Court, Eastern District of New York shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

6.10     **Waivers, etc. To Be In Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.11     **When Agreement Becomes Effective; Counterparts**. This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.12     **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

Date: 06, 20, 2017                          Date:

_____                 _____
AHMAD KHOLBEKOV                          ADIL ERBABAEV

DocuSign Envelope ID: 74733E0F-D7A9-4EDC-B392-F8470F32CF18

and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.9     **Continuing Jurisdiction.** The United States District Court, Eastern District of New York shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

6.10     **Waivers, etc. To Be In Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.11     **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.12     **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

Date:                                                 Date:


_____                 _____
AHMAD KHOLBEKOV                          ADIL ERBABAEV

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMAD KHOLBEKOV, ADIL ERBABAEV, individually and on behalf of all others similarly situated, | 16-cv-7162 (RRM) (SMG) |
| Plaintiffs, | |
| - against – | |
| AT HOME SOLUTIONS, LLC. | |
| Defendant. | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Named Plaintiffs AHMAD KHOLBEKOV, ADIL ERBABAEV (the "Named Plaintiffs"), and by Defendant AT HOME SOLUTIONS, LLC. ("Defendant") (Named Plaintiffs and Defendant are herein collectively the "Parties").

1.    **RECITALS AND BACKGROUND**

WHEREAS, Named Plaintiffs filed a Complaint on December 29, 2016, in the United States District Court, Eastern District of New York bearing Case No. 16-cv-7162 ("Litigation"); and

WHEREAS, the Parties will file a joint motion with the Court seeking to certify the Litigation for settlement purposes only as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Motion") with respect to all home health aides who worked for AT HOME SOLUTIONS, LLC during the period from January 1, 2015 through December 31, 2015 ("Relevant Time Period"); and

WHEREAS, the Parties have engaged in and completed sample discovery during the course of the Litigation in connection with its potential settlement; and

WHEREAS, Defendant denies and continues to deny each of the material allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Defendant nonetheless, solely for the purpose of settling the Litigation and without admitting any wrongdoing or liability, has agreed to disseminate a Notice (as defined below) pursuant to Rule 23 of the Federal Rules of Civil Procedure to all Class Members and Collective Members (as those terms are defined below);

WHEREAS, the purpose of this Agreement is to settle fully and finally all State Law Claims and FLSA Claims (both as defined below), between Named Plaintiffs, Class Members, and Defendant, for all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel (as defined below) have evaluated the merits of the claims made against Defendant and the impact of this Agreement on Plaintiffs and Class Members and, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery less favorable or immediate than that described in this Agreement, Plaintiffs' Counsel is satisfied that this Agreement's terms and conditions are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs and the Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 2.      DEFINITIONS

In addition to the terms already defined above, the terms below shall have the meanings ascribed to them.

2.1      **"Administrator"** or **"Claims Administrator."** The terms Administrator or Claims Administrator refer to Rust Consulting, Inc., the administrator Plaintiffs have selected to mail the Notices (as described below) and to administer the terms of this Agreement.

2.2      **"Class"** or **"Class Member(s)."** Class or Class Members shall mean: all home health aides who worked for AT HOME SOLUTIONS, LLC during the period from January 1, 2015 through December 31, 2015, who do not opt-out of the Litigation as explained below. Class Members acknowledge that they agree to settle and release all State Law Claims and FLSA claims they may have against Defendant and/or Releasees (as defined below).

2.3      **"Class Counsel"** or **"Plaintiffs' Counsel."** Class Counsel or Plaintiffs' Counsel shall mean Gennadiy Naydenskiy of Naydenskiy Law Group, P.C.

2.4      **"Class Member List."** The Class Member List shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) telephone number; and (iii) dates of employment during the relevant Time Period; contained in a confidential document that the

Defendant shall provide to the Claims Administrator.

2.5     **"Named Plaintiffs"**. Named Plaintiffs shall mean AHMAD KHOLBEKOV and ADIL ERBABAEV.

2.6     **"Court."** The Court shall mean the United States District Court for the Eastern District of New York, the Honorable United States Magistrate Judge Steven M. Gold presiding; or such other Judge or Magistrate Judge to whom the Litigation may then be assigned.

2.7     **"Days."** Unless otherwise specified, days shall mean calendar days.

2.8     **"Defense Counsel."** Defense Counsel shall be Philip K. Davidoff of FordHarrison LLP.

2.9     **"Fairness Hearing."** The Fairness Hearing shall mean the hearing before the Court relating to the Motion for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

2.10     **"Final Effective Date."** The Final Effective Date shall be thirty (30) days after the Court has entered a Final Order approving this Agreement provided the time to appeal from the Final Order has expired and no notice of appeal has been filed. In the event a notice of appeal is filed, the Final Effective Date shall be the latest date upon which one of the following has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

2.11     **"Final Order."** The Final Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of funds from the Settlement Account, approval of professional fees and costs, and dismissal of the Litigation.

2.12     **"FLSA Claims."** The FLSA Claims shall mean all wage and hour claims that were asserted or could have been asserted pursuant to the Fair Labor Standards Act and/or its implementing regulations by or on behalf of the Plaintiffs or Class Members. "Released FLSA Claims" include all claims under the FLSA for unpaid minimum or overtime wages asserted in the litigation or that could have been asserted in the litigation.

2.13 **"Implementing Order."** The Implementing Order shall mean the Order entered by the Court: (i) effectuating the settlement; (ii) approving the proposed Notice; (iii) directing the manner and timing of publishing the Notice to the Class, and (iv) appointing Class Counsel.

2.14 **"Motion for Final Approval."** The Motion for Final Approval shall mean the Parties' Motion for class action certification for settlement purposes only pursuant to Rule 23 of the Federal Rules of Civil Procedure; and any other relief necessary to consummate the settlement of the Litigation.

2.15 **"Notice," "Notices".** Notice and Notices shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed settlement.

2.16 **"Objector."** Objector shall mean any Class Member who properly files an objection to the settlement in accordance with the instructions contained in the Notice; it shall not include any individual who opts-out of this Agreement.

2.17 **"Opt-out Statement."** An Opt-out Statement is a written signed statement submitted by a Class Member who has decided to opt out and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement waives and releases all State Law Claims, even if he or she does not cash his or her settlement check(s) in this matter. A Class Member who submits an Opt-out Statement retains all rights to maintain State Law Claims and FLSA claims

2.18 **"Settlement Account."** The Settlement Account shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to the Parties. The Settlement Account shall contain the Settlement Funds.

2.19 **"Settlement Checks."** The Settlement Checks shall mean the checks issued to from the Settlement Account by the Administrator to the Plaintiffs as calculated by the Administrator in accordance with this Agreement.

2.20 **"Settlement Amount."** The Settlement Amount means One Hundred Fifty Thousand Dollars and Zero Cents ($150,000), which is the maximum amount Defendant will pay to settle the Litigation as set forth in this Agreement, excluding Defendant's obligation to pay the employer payroll taxes on the portion of the settlement that constitutes wages.

2.21 **"State Law Claims."** The State Law Claims shall mean all minimum wage, overtime pay, and NYLL §195 claims that were or could have been asserted under New York State Labor Law and its implementing regulations by the Plaintiffs and the Class Members. Released New York State Law Claims include, unpaid minimum or overtime wages, and Wage

Theft Prevention Act penalties and any other related wage and hour claims and/or damages resulting from the alleged failure to pay overtime or wages, interest on such claims, and attorneys' fees, expenses and costs related to such claims.

## 3.   INITIAL PROCEDURAL ISSUES

3.1     **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

3.2     **Retention of the Administrator.** Plaintiffs shall engage the Administrator to mail Notices and administer the terms of the Agreement.

3.3     **Responsibilities of the Administrator.** The Administrator shall be responsible for:

A.      preparing, printing and disseminating the Notice to the Class;

B.      copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

C.      promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class that the Administrator receives;

D.      keeping track of Opt-out Statements and maintaining the original mailing envelope in which the request was mailed;

E.      mailing all required tax forms to Class Members and to Class Counsel as provided herein;

F.      setting up a Settlement Account to be used for the distribution of all Settlement Checks to Plaintiffs, Class Members, Plaintiffs' Counsel, the Claims Administrator;

G.      calculating the amount of each Plaintiff's and Class Member's Settlement Check;

H.      calculating the employer-side payroll taxes required pursuant to the settlement;

I.      calculating and paying each Plaintiffs and Class Member's withholding taxes and preparing appropriate W-2 and 1099 tax forms for each Plaintiff and Class Member;

J.      mailing the Settlement Checks to Plaintiffs and Class Members;

K.      ascertaining current address and addressee information for each Notice returned as undeliverable and the mailing of Notice;

L.      referring to Class Counsel and Defense Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

M.    responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

N.    promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

O.    maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

P.    confirming in writing to Class Counsel and Defense Counsel its completion of the administration of the settlement;

Q.    timely responding to communications from the Parties or their counsel;

R.    preparing and mailing all notices required pursuant to the Class Action Fairness Act; and,

S.    such other tasks the Parties mutually agree.

T.    In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly to Plaintiffs' Counsel and to Defense Counsel (a) a list of all Class Members and; (b) a list of all Class Members and Collective Members who filed timely objections; and, (c) a list of all Class Members and/or Collective Members who requested to opt out of the settlement at any time during the opt-out period. The Administrator shall also provide Defendant with an updated address list for the Class Members. Throughout the period of claims administration, the Administrator will provide reports to counsel for the Parties upon request by either Party regarding the status of the mailing of the Notices to the Class, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

3.4    **Notice.** The Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object to, opt out of, take no action – in which case they shall remain in the Class and obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing.

3.5    Within fifteen (15) days of the entry of the Implementing Order by the Court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court-approved Notices of Proposed Settlement and Fairness Hearing. The Administrator will take all *reasonable steps* to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including at least one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

3.6    **Access to the Administrator**. The Parties will have equal access to the

Administrator throughout the claims administration period. Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all accurate information necessary to reasonably assist the Administrator in locating the Class.

       3.7        **Approval of the Implementing Order.**

       (A)      The proposed Implementing Order will seek a deadline sixty (60) days from the initial mailing of Notice to the Class: (a) to file Opt-out Statements and/or (b) to become Objectors. The Proposed Implementing Order shall also seek a date for the Fairness Hearing for Final Approval of the Settlement that shall be no earlier than seventy-five (75) days following the date on which the Court enters the proposed Implementing Order.

       (B)      The Parties will work together, diligently and in good faith, to expeditiously obtain an Implementing Order, Final Order and Final Judgment and Dismissal with prejudice. Any disputes that arise between the Parties related to the Parties' efforts to obtain a Final Order, Final Judgment and Dismissal with prejudice shall be submitted to the Court.

3.8      **Notice to the Class.**

       (A)      Within seven (7) days of the Court's entry of the Implementing Order, Defense Counsel will provide the Administrator, in electronic form and for all Class Members, the Class Member List. All information provided regarding the Class will be treated as confidential information by the Administrator.

3.9      **Opt-outs.**

       (A)      Class Members who choose to opt out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to the Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers along with a statement indicating his or her intention to opt-out such as: "I opt out of the wage and hour settlement." To be effective, an Opt-out Statement must be postmarked or received by the Administrator within sixty (60) days after the initial mailing of Notice to the Class.

       (B)      The end of the time period to opt out of the settlement ("Opt-out Period") shall be sixty (60) days after the initial mailing of Notice to the Class.

(C)     The Administrator will send a final list of all Opt-out Statements to Plaintiffs' Counsel and Defense Counsel before the Fairness Hearing. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case and have any and all State Law Claims and FLSA Claims released and dismissed. Defendant will fund the Settlement Account with the aggregate amount allocated to each Class Member as set forth in this Agreement. Defendant shall have no obligation to pay any Class Member who opts out of this settlement as set forth in this Agreement.

(E)     If 20% or more Class Members exclude themselves from the settlement, then Defendant will have 14 days from Defense Counsel's receipt of the final list of all Opt-out Statements from the Administrator, to rescind this Agreement and return each party to its respective position prior to the settlement. In the event of a rescission, Defendant shall be responsible for paying all of the Administrator's fees.

3.10     **Objections to Settlement.**

(A)     Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Administrator via First-Class United States Mail postmarked by sixty (60) days after the initial mailing of Notice to the Class. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone number for the Class Member making the objection. The Administrator will stamp the date received on the original and send copies of each objection, supporting documents, to Plaintiffs' Counsel and Defendant's' Counsel by email delivery no later than three (3) days after receipt of the objection.

(B)     An Objector has the right to appear at the Fairness Hearing, either with or without counsel hired by the Objector at the Objector's expense. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. Filing an objection does not constitute the filing of an Opt-out Statement.

3.11     **Fairness Hearing and Motion for Final Approval and Dismissal**. At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to Class Members; (3) order the attorneys' fees, expenses and costs to be paid to Plaintiffs' Counsel out of the Settlement Account; (4) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt out; (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement.

3.12     **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Litigation will proceed as if no settlement had been attempted.

## 4.     SETTLEMENT TERMS

4.1     **Settlement Fund Computation and Allocations.**

Individual Class Members proportionate shares of the Settlement Fund shall be computed pursuant to the formula below:

(A)     One (1) point for every hour in excess of 40 hours per work week from October 13, 2015 through December 31, 2015 and half a point (.5) for every hour in excess of 40 hours per work week from January 1, 2015 through October 12, 2015.

(B)     The Settlement Fund, after deductions for court-approved attorneys' fees, Service Awards and all other court-approved fees, expenses and disbursements, will be divided by the aggregate number of points accrued by the Named Plaintiffs and all of the Class Members and any points that would have been attributable to any individuals who opted out of the settlement had they remained Class Members ("Point Value").

(C)     Each Named Plaintiff's and Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount".

(D)     Only Class Members who do not timely opt out under the terms of this Agreement shall be entitled to receive their Individual Settlement Amount.

(E)     Service Awards. Service Awards, subject to court approval, totaling $20,000 will be paid to the following individuals based on the services they provided to the Class as follows: (1) $10,000 to Ahmad Kholbekov and (2) $10,000 to Adil Erbabaev.

(F)    **Maximum Payment**. The Parties expressly acknowledge that Defendant shall not be required to pay more than the Settlement Fund of One Hundred Fifty Thousand Dollars ($150,000.00) to the Class Members, Service Awards, Plaintiffs' Counsel, Claims Administrator, or to anyone else (excluding employer's share of payroll taxes due under this Agreement), regardless of the number of Class Members included in this settlement.

(G)    **Payment.** The Settlement Fund shall be funded within ten (10) days of the Final Order ("Payment").

**(H)    Mailing of Settlement Checks.**

(i)    The Claims Administrator shall, within ten (10) business days after receipt of the Payment, and provided the Final Effective Date has passed, send the Settlement Checks comprising of the Plaintiffs' Individual Settlement Amounts, Plaintiffs' Counsels' approved professional fees and expenses, and any Service Awards for Plaintiffs to the Class Members, Service Award recipients and Plaintiffs' Counsel.

(ii)    Class Members will have sixty (60) days from the date that the checks are mailed to cash their checks. After the expiration of that period, to the extent that any funds remain in the Settlement Fund, the Administrator will distribute the balance to the Class Members who have cashed their checks on a pro rata basis. All unclaimed amounts after this second distribution will be provided to National Employment Lawyers Association, New York ("NELA NY").

42    **Professional Fees and Costs.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees of no more than 33 1/3% of the Settlement Amount plus their reimbursable costs. Defendant will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court and provided it does not increase the Settlement Fund. If the fees and/or costs are reduced by the Court, such amount up to and including $1,000 shall be deducted from the Settlement Amount and returned to Defendant. If the fees and/or costs are reduced by more than $1,000, such amount shall remain in the Settlement Fund to be distributed to the Class Members. The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval.

43    **Claims Administrator's Fees.** As part of Parties' motion for final approval of the settlement, Plaintiffs will submit a declaration from the Claims Administrator detailing the administration process, as well as the costs of administration. Such fees shall be paid by the Settlement Fund.

4.4     **Tax Characterization.**

(A)     Except as set forth below, settlement payments to the Class Members will be allocated as follows for tax purposes: (i) 50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting, and (ii) 50% in consideration for liquidated damages and interest as non-wage payments subject to 1099 reporting.

(B)     All Wage Payments (*i.e.,* the portion set forth in Section 4.4 (A)(i) above) shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W2. All Non-Wage Payments (*i.e.,* the portion set forth in Section 4.4 (A)(ii) above) shall be made without any tax withholdings and shall be reflected on a Form 1099 issued to each Class Member r. Payments of attorneys' fees and costs pursuant to Section 4.2 shall be made without any withholdings. Class Counsel will receive a Form 1099 for this payment. Any Service Award payment shall be made without any withholdings and reported to the IRS via a Form 1099. Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section 4.4.

(C)     Defendant shall pay the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments. The Claims Administrator shall be responsible for making all withholdings from employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments.

4.5     **Hold Harmless.**

(A)     With respect to payments received pursuant to this Agreement not characterized as W-2 wage income, the Plaintiffs and Class Members assume full responsibility for any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that any individual or entity and/or Defendant is liable for any failure by any Plaintiff, Class Member and/or Defendant to pay federal, state or local income or employment or payroll taxes with respect to any payment received pursuant to this settlement that is not characterized as W-2 wage income, Plaintiffs and the Class agree to hold Defendant harmless, and indemnify Defendant from any payments the Defendant may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS tax form 1099 and any

Plaintiff's and/or Class Member's failure to pay any taxes that any such individual or entity owes related to said income.

(B)     With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Plaintiffs assume responsibility for any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as Attorneys' Fees, Plaintiffs shall be responsible for said payments and shall hold Defendant harmless for said payments.

## 5.     RELEASE

### 5.1     Release of Claims.

(A)     Upon the Order Granting Final Approval, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt out of this Agreement, on his or her own behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, in their capacity as such, fully releases and discharges Defendant, Defendant's present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, members, partners, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, in their capacity as such, (collectively, the "Releasees"), from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with the Defendant under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, administrative or other mandatory charges, penalties, overtime pay, minimum wage, failure to maintain and furnish employees with proper wage statements and/or records, and all other claims that were asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including but not limited to the Fair Labor Standards Act, New York Labor Law, New York Code of Rules and Regulations, New York Minimum Wage Order for Miscellaneous Industries and Occupations, and the New York Wage Theft Prevention Act). This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees' and costs.

(B)      All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:

By endorsing this check, I consent to join the FLSA collective action against Defendant styled Kholbekov et. al. v. At Home Solutions, LLC., Case No. 16-cv-7162, and release Defendant from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule or regulation brought or which could have been brought in the above Litigation, including but not limited to minimum wage and overtime claims.  Any modification or amendment of the above-language by the Class Member, at Defendant's discretion, may not be accepted, and may void the Settlement Check. The Claims Administrator shall provide Defendant signed copies of each Settlement Check after they have been cashed."

(C)      **Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(D)      Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, the Plaintiffs and the Class, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendant for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Class. Plaintiffs further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Plaintiffs' Counsel's representation of the Class in the Litigation.

## 6.      INTERPRETATION AND ENFORCEMENT

6.1      **Cooperation Between the Parties; Further Acts**. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

6.2      **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

6.3      **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns, in their capacity as such.

6.4      **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.5      **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.6      **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

6.7      **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

6.8      **Governing Law.** This Agreement shall in all respects be interpreted, enforced

and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.9 **Continuing Jurisdiction.** The United States District Court, Eastern District of New York shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

6.10 **Waivers, etc. To Be In Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.11 **When Agreement Becomes Effective; Counterparts**. This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.12 **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

Date:                                             Date:

_____                    _____

AHMAD KHOLBEKOV                           ADIL ERBABAEV

AT HOME SOLUTIONS, LLC.

Date: 6/20/17

By: Simon Aronshtein